RILEY v RICHARDS

Docket No. 77442. Submitted March 18, 1985, at Detroit.—Decided
August 5, 1985. Leave to appeal applied for.

Plaintiff, Julia Riley, brought an action against James N. Richards, an alleged intoxicated person, and Palmiter Recreation,
Inc., doing business as Fort Park Bar and Recreation, under the
dramshop act. Plaintiff alleged that Palmiter, through its
agents or employees, served alcoholic beverages to defendant
Richards while he was visibly intoxicated, and that Richards
thereafter injured plaintiff in an automobile collision. Before
the trial began plaintiff and defendant Richards entered onto
the record a stipulation that the liability of Richards would be
limited to the amount of liability insurance Richards had, in
exchange for the admission by Richards that he was intoxicated
and that he had caused the accident. The case proceeded to
trial during which defendant Richards defended the issue of
damages and Palmiter defended on the ground of insufficient
evidence as to its liability. The jury returned a verdict in favor
of plaintiff, but the trial court granted defendant Palmiter's
motion for judgment notwithstanding the verdict, Wayne Circuit Court, Patrick J. Duggan, J., holding that plaintiff could
not recover against Palmiter because by entering into the
stipulation with Richards plaintiff had violated the name and
retain provision of the dramshop act. Plaintiff appealed. *Held:*

1. The stipulation entered into in this case did not exclude
defendant Richards as an interested party and does not, therefore, bar the dramshop action against Palmiter. The stipulation
admitted intoxication and liability but not damages, which
were actively litigated by defendant Richards. Under the circumstances of this case, Richards remained an interested party
and the name and retain provision of the dramshop act was
satisfied.

2. Palmiter's allegation that it had the right to present

REFERENCES FOR POINTS IN HEADNOTES

[1-4] Am Jur 2d, Intoxicating Liquors § 561 *et seq.*

Common-law right of action for damage sustained by plaintiff in
consequence of sale or gift of intoxicating liquor or habit-forming
drug to another. 97 ALR3d 528.

Proof of causation of intoxication as a prerequisite to recovery
under Civil Damage Act. 64 ALR3d 882.

certain defenses of which it was wrongfully deprived when Richards admitted his intoxication and negligence is without merit. Palmiter had only those factual defenses of Richards which were truly available to Richards. Because Richards did not have a nonintoxication defense available to him in light of the facts, that defense was also not available to Palmiter.

3. The trial court did not err by excluding evidence of the stipulation at trial nor by denying Palmiter's motion for a directed verdict.

Reversed and remanded for reinstatement of the jury verdict.

M. WARSHAWSKY, J., dissented. He would hold that the stipulation entered into by plaintiff and defendant Richards violated the name and retain provision of the dramshop act, thus barring plaintiff's action against Palmiter. Further, he would hold that defendant Palmiter was prejudiced by defendant Richards's waiver of several defenses which Palmiter would otherwise have been able to advance under the dramshop act. He would affirm.

OPINION OF THE COURT

1. INTOXICATING LIQUORS — DRAMSHOP ACT — NAME AND RETAIN PROVISION.

The dramshop act requires the retention of the alleged intoxicated defendant as an interested party throughout the dramshop litigation; if a settlement is reached between the alleged intoxicated defendant and the plaintiff prior to the conclusion of trial, that defendant is not considered to have been retained (MCL 436.22; MSA 18.993).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — NAME AND RETAIN PROVISION — STIPULATIONS.

A stipulation between a plaintiff in a dramshop action and the alleged intoxicated defendant which limited only the damages for which the defendant could be found liable, and which otherwise left the intoxicated defendant as an interested party who proceeded to vigorously defend the lawsuit did not violate the name and retain provision of the dramshop act (MCL 436.22; MSA 18.993).

3. INTOXICATING LIQUORS — DRAMSHOP ACT — DEFENSES.

A dramshop defendant may advance any factual defenses open to the alleged intoxicated defendant but may not advance defenses which are nonexistent under the facts of the case; where the alleged intoxicated defendant stipulated to his intoxication the dramshop defendant was properly deprived of a defense of nonintoxication (MCL 436.22; MSA 18.993).

Dissent by M. Warshawsky, J.

4. Intoxicating Liquors — Dramshop Act — Name and Retain
    Provision.

  *A settlement between the plaintiff in a dramshop action and the
  alleged intoxicated person prior to the conclusion of the dram-
  shop litigation, regardless of the parties' characterization of the
  agreement, violates the name and retain provision of the
  dramshop act and bars further action against the dramshop
  defendant (MCL 436.22; MSA 18.993).*

*Thurswell, Chayet & Weiner* (by *Janet M. Bran-
don* and *Gerald E. Thurswell*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen, P.C.* (by *John P. Jacobs*), for defendant
Palmiter Recreation, Inc.

Before: Beasley, P.J., and M. J. Kelly and M.
Warshawsky,* JJ.

M. J. Kelly, J. Plaintiff appeals as of right from
a judgment *non obstante veredicto* which vacated
a jury verdict of $265,500 in favor of plaintiff in
this dramshop action. We reverse and order rein-
statement of the jury's verdict.

This case arises out of an automobile collision
which occurred on November 7, 1979, when plain-
tiff's automobile was rear-ended by a vehicle oper-
ated by defendant James Richards. Palmiter Rec-
reation, Inc. operated a tavern known as Fort
Park Bar and Recreation and is named as a defen-
dant in this action under the Michigan dramshop
act, MCL 436.22; MSA 18.993. Plaintiff alleges that
Palmiter, through its agents or employees, served
alcoholic beverages to Richards while he was visi-
bly intoxicated.

On the morning of the first day of trial, plaintiff
and defendant Richards entered the following stip-
ulation on the record:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*"[Ms. Brandon, plaintiff's counsel]:* Second, we would like to put on a stipulation that has been entered into between defendant Richards and plaintiff, in that we will be agreeing to cap the policy limits to 20,000 dollars in exchange for the defendant's stipulation of allowing in evidence that Mr. Richards' blood alcohol level was .20 when the breathalyzer test was taken on the night of the accident. Does that summarize—

*"Mr. O'Neill [counsel for defendant Richards]:* If I could just elaborate on that. The stipulation is that the plaintiff would agree to limit her recovery against my client, Mr. Richards, to the 20,000 dollars worth of liability insurance that he has, there will be no interest on that amount, in exchange for my client's admission of negligence and the causation of the accident.

"Also, in exchange for his admittion *[sic]* that he blew .20 on the breathalyzer test. I don't know if that is the same as the blood alcohol level.

*"Ms. Brandon:* All right.

*"Mr. O'Neill:* Also, further, I indicated I would not object to the calling of Doctor Werner Spitz as a witness on her behalf.

*"The Court:* Okay.

*"Mr. O'Neill:* Those are the terms of the stipulation?

*"Ms. Brandon:* Yes."

Palmiter objected to the stipulation and moved for summary judgment under *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), *reh den* 414 Mich 1111 (1982). The trial court denied Palmiter's motion, relying on an order of the Supreme Court suspending decisions on all summary judgment motions brought under *Putney,* Administrative Order 1983-1, 417 Mich cxviii (1983). The case proceeded to trial.

At trial, defendant Richards admitted intoxication and negligence but vigorously defended the damages issue on the ground that plaintiff had not sustained serious impairment of body function as a result of the accident. Palmiter defended on the

ground that the evidence was insufficient to establish that one of its employees or agents had served Richards alcohol while he was visibly intoxicated. The jury returned a verdict of $255,000 jointly and severally against both defendants. The jury also entered a separate verdict against Palmiter in the amount of $10,500 for economic damages.

These verdicts were rendered in September of 1983. Palmiter filed its motion for judgment notwithstanding the verdict in November of 1983. The trial court issued its opinion in February of 1984, following the release of the Supreme Court's decision in *Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), *reh den* 419 Mich 1201 (1984). Plaintiff and defendant Richards thereafter filed a satisfaction of judgment for $20,000 and plaintiff proceeded with this appeal from the judgment notwithstanding the verdict in favor of Palmiter. Defendant Richards is not a party on appeal.

The dispositive issue in this case is whether the stipulation or agreement entered into between plaintiff and defendant Richards effectively bars an action by plaintiff against Palmiter for her failure to "name and retain" defendant Richards in the lawsuit. MCL 436.22; MSA 18.993 provides in relevant part:

"An action against a retailer, wholesaler, or anyone covered by this act or a surety, shall not be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement."

Prior to *Putney,* dramshop plaintiffs could, and often did, settle with an alleged intoxicated defendant in exchange for that defendant's assistance in proving plaintiff's claim against the tavern owner.

In an attempt to comply with the dramshop act, the alleged intoxicated defendant was then retained in the litigation in name only. See *Tebo v Havlik,* at 361-364. The Supreme Court put an end to this practice when, in *Putney,* it ruled that the dramshop act requires an alleged intoxicated defendant to be retained as "an interested party" throughout the dramshop litigation. The Court expressly held that an alleged intoxicated defendant is not retained if "a settlement of any kind is reached" between that defendant and the plaintiff prior to the conclusion of trial. 414 Mich 184. The rule of *Putney* is to be applied to all settlements entered into following the release of that decision in September of 1982. *Tebo v Havlik, supra.* The stipulation in this case was placed on the record in July of 1983 and represents an obvious and considered attempt to, depending on one's perspective, avoid or comply with the rule announced in *Putney.*

While the issue before us is a close one and admits of several reasonable responses, we conclude that the stipulation negotiated in this case does not exclude defendant Richards as an interested party to this lawsuit and does not bar plaintiff's dramshop action against Palmiter. We reach this conclusion for several reasons. First, and as explained in *Tebo v Havlik,* the Court's decision in *Putney* changes a principle of law that had been fixed by this Court from 1976 through 1982. Because of the far-reaching implications of its "new rule" in *Putney,* the Supreme Court chose to proceed cautiously and, in *Tebo v Havlik,* declined to apply *Putney* retroactively. We prefer the cautious approach as well and therefore decline to apply the rule of *Putney* to an agreement between plaintiff and the alleged intoxicated defendant which limited damages but left the defendant an inter-

ested party at trial. We note that at least one other panel of this Court has, in a different and unrelated context, also rejected an expansive interpretation of *Putney.* See *Newman v Hoholik,* 138 Mich App 66, 71; 359 NW2d 253 (1984).

Second, the Supreme Court in *Putney* sought to guarantee that the alleged intoxicated defendant remained "an interested party" to any dramshop action. In *Putney* and in *Burns v Carver* (companion case to *Tebo v Havlik),* the alleged intoxicated defendants were mere nominal parties to the action. Full settlement agreements had been negotiated in those cases prior to trial, whereby the plaintiffs' claims against the alleged intoxicated defendants were dismissed in exchange for fixed and limited amounts. 414 Mich 188. The settling defendants thus had no interest in the subsequent trial proceedings, whether they were settled out with insurance coverage for payment or not.

Unlike the alleged intoxicated person defendants in *Putney* and in *Burns v Carver,* defendant Richards (or his insurance carrier) did not agree to pay a sum certain for peace. The stipulation conceded negligence and intoxication but not damages. Richards's insurer became the real party in interest —the entire policy limits were at risk—as the potential for recovery of damages ranged from $0 to $20,000. Liability hinged upon plaintiff's ability to prove serious impairment. The stipulation resolved evidentiary issues, but did not terminate the litigation. The alleged intoxicated person remained in the case and his insurer's attorney presented a vigorous and viable defense as to the nature of plaintiff's injuries. Richards's counsel participated in jury voir dire, in opening and closing statements, introduced the expert testimony of two witnesses at trial and participated in a thorough cross-examination of most witnesses,

including those witnesses who were examined by deposition prior to trial. Defendant Richards's counsel also moved for a directed verdict at the close of plaintiff's proofs. Clearly, and unlike the alleged intoxicated persons in *Putney* and in *Burns v Carver,* defendant Richards in this case was far more than a nominal party and in fact diligently defended against the lawsuit. We find that defendant Richards's continued involvement in the case satisfies the name and retain provision of the dramshop act.

Finally, we reject defendant Palmiter's contention that the dramshop act guarantees it the right to present certain defenses and that Richards wrongfully deprived Palmiter of those defenses when he stipulated to his intoxication and negligence. MCL 436.22; MSA 18.993 provides only that Palmiter may advance any of the "factual defenses open to the alleged intoxicated person". We interpret "factual defenses" to mean those defenses available to the alleged intoxicated defendant based on the particular facts of the case. We do not interpret "factual defenses" to mean fraudulent defenses or non-existent defenses. Since Richards knew that he was intoxicated when he collided with plaintiff's automobile, a belief borne out by a blood alcohol content of .20%, he did not truly have a non-intoxication defense available to him and that defense was thus not available to defendant Palmiter. There is a difference between an intoxicated person and an alleged intoxicated person. The tavern is not statutorily enabled to posture sobriety if "the suit don't fit".

For the foregoing reasons, we reverse the judgment notwithstanding the verdict granted defendant Palmiter. This case is remanded for reinstatment of the verdict rendered by the jury on September 29, 1983.

We find no need to order a new trial on the ground that the trial court erroneously excluded evidence of the stipulation at trial. The testimony of defendant Richards could have been impeached by prior inconsistent statements made at depositions. Palmiter declined to do so and we find no abuse of discretion on the part of the trial court in preventing Palmiter from impeaching Richards through introduction of the stipulation. Nor do we find that the trial court erred in denying defendant Palmiter's motion for a directed verdict since the court properly found that, based on the evidence introduced at trial, a jury could properly and reasonably have concluded that Palmiter, through its agents or employees, served defendant Richards alcoholic beverages while he was visibly intoxicated.

Reversed and remanded. Jurisdiction not retained.

BEASLEY, P.J., concurred.

M. WARSHAWSKY, J. *(dissenting)*. The central issue in this case is whether plaintiff settled with the individual defendant Richards in violation of the rule in *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), *reh den* 414 Mich 1111 (1982), and MCL 436.22; MSA 18.993, also known as the dramshop act.

The relevant portion of the dramshop act, subsection (5), provides:

"An action against a retailer, wholesaler, or anyone covered by this act or a surety, shall not be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement. The bond required by this act shall continue from year to year unless sooner canceled by the surety."

The Supreme Court held that a defendant has not been "retained in the action" within the meaning of the statute if a settlement of any kind is reached between the plaintiff and the allegedly intoxicated defendant before "the litigation is concluded by trial or settlement". *Putney,* p 184.

In *Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), the Supreme Court held that the rule of *Putney* is applicable to suits where the settlement was entered into after September 28, 1982, the date of the *Putney* decision. Impanelling of the jury in the instant case occurred July 20, 1983.

On the morning of the commencement of the trial the following stipulation was entered on the record:

"*(Ms. Brandon):* Second, we would like to put on a stipulation that has been entered into between defendant Richards and plaintiff, in that we will be agreeing to cap the policy limits to 20,000 dollars in exchange for the defendant's stipulation of allowing in evidence that Mr. Richards' blood alcohol level was .20 when the breathalyzer test was taken on the night of the accident. Does that summarize—

"*Mr. O'Neill:* If I could just elaborate on that. The stipulation is that the plaintiff would agree to limit her recovery against my client, Mr. Richards, to the 20,000 dollars worth of liability insurance that he has, there will be no interest on that amount, in exchange for my client's admission of negligence and the causation of the accident.

"Also, in exchange for his admittion [sic] that he blew .20 on the breathalyzer test. I don't know if that is the same as the blood alcohol level.

"*Ms. Brandon:* All right.

"*Mr. O'Neill:* Also, further, I indicated I would not object to the calling of Doctor Werner Spitz as a witness on her behalf.

"*The Court:* Okay.

"*Mr. O'Neill:* Those are the terms of the stipulation?

*"Ms. Brandon:* Yes."

Palmiter objected to the stipulation and moved for summary judgment under *Putney, supra.* The trial court denied Palmiter's motion, and the case proceeded to trial.

Whatever appellation is given to a settlement agreement, in this case "stipulation", the language and intent of both the Legislature and Supreme Court is clear. That intent is to bar an action by a plaintiff in a dramshop action if the plaintiff settles with the minor or alleged intoxicated person prior to the conclusion of the litigation by trial or settlement.

Such is the case before us. The plaintiff settled with the alleged intoxicated person and continued her suit against the tavern. The alleged intoxicated person was maintained in the suit only as a nominal party. This is contrary to the objective of the statute and the controlling case law.

A very real effect of such a stipulation or settlement is demonstrated in this case, to wit: the factual defenses of the defendant Richards including negligence, causation, and the right to keep out the results of the Breathalyzer test, were open and available to defendant Palmiter under the dramshop act, but all were waived by Richards. The direct effect of the stipulation or settlement was to strip defendant Palmiter of its defenses.

Stability is needed in this area. The Supreme Court has given the directions to provide that stability. It would delude and deflect the direction given if the trial court is not affirmed.

For the reasons set out I would affirm the trial court.